IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**DONNA KEMP,** *on behalf of herself and*     *
*on behalf of three classes of similarly*     *
*situated persons*,     *
    *
        Plaintiffs,     *
v.     *     Civil No. **PJM 18-472**
    *
**SETERUS, INC.,** *et al.*,     *
    *
        Defendants.     *

## MEMORANDUM OPINION

Putative Class Plaintiff Donna Kemp has sued the servicer of her home mortgage loan, Seterus, Inc., and the owner of the loan, Federal National Mortgage Association (Fannie Mae), alleging violations of various Maryland state lender laws as well as the federal Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq*. Defendants have jointly filed a Motion to Dismiss the Second Amended Complaint. ECF No. 24. For the reasons that follow, Defendants' Motion to Dismiss is **GRANTED** and the case is **REMANDED** to state court for all further proceedings.

      **I.**      **FACTUAL AND PROCEDURAL BACKGROUND**

This action centers around Seterus' servicing of Kemp's mortgage loan and allegedly improper property inspection fees that it charged her following her default on the loan.

**A. Kemp's Mortgage Loan and Subsequent Default**

In April 2007, Kemp obtained a home mortgage loan from Countrywide Home Loans, Inc., secured by a deed of trust on real property located in Glen Burnie, Maryland (the Property). Hr'g Tr. at 4:3-7; ECF No. 24-4. Although the exact date has not been provided, at some point after the origination of the loan, it was assigned to Fannie Mae, the current owner. Hr'g Tr. at 5-6.

In 2017, Kemp fell behind on her mortgage payments. ECF No. 17 ¶ 19. On April 10, 2017, Seterus, Kemp's loan servicer, declared the loan to be in default and stated that if Kemp did not "cure the default on or before May 15, 2017, it may result in acceleration of the sums secured by the mortgage and may result in the sale of the premises." *Id.* ¶ 21. On July 14, 2017, Kemp purportedly wrote to Seterus requesting information about the status of the loan, notifying it that she had not been receiving her monthly periodic statements. *Id.* ¶ 22.

Seterus responded to Kemp's request for information on July 24, 2017. In its correspondence, Seterus disclosed to Kemp, apparently for the first time, that it had charged her loan account with certain property inspection fees from August 26, 2016, through July 24, 2017. *Id.* ¶ 24. Kemp again wrote Seterus on September 6, 2017, requesting information about the property inspection fees as well as an accounting as to the total due on the loan. Kemp alleges that Seterus received this second request on September 21, 2017. *Id.* ¶ 25.

On September 25, 2017, in response to her request for a payoff total on her loan, Seterus informed Kemp that she owed $180.00 in property inspection fees that she was required to pay in connection with any loan payoff. The next day, Seterus responded to Kemp's second inquiry asking about the property inspection fees, stating:

> [T]he authority to charge fees such as property inspection fees or legal fees is contained in the Deed of trust . . . . Enclosed is a copy of the Deed of Trust for your reference. Due to the continued contractual delinquency of the loan, Seterus exercised its right under the terms of the signed Deed of Trust to protect the loan owner's interest in the property. Property inspections are ordered when a loan is more than 45 days contractually delinquent, and every 30 days if the contractual delinquency continues. These were drive-by inspections to see if the property was occupied in good repair. The fee for this service was billed to Seterus by an outside contractor and then assessed to the loan. As of the date of this loan, Seterus has assessed the loan [twelve] property inspection fees [at $15.00 per inspection] totaling $180.00. These fees are considered valid.

*Id.* ¶ 26.

Kemp alleges that the assessment of these property inspections fees on the loan violated Maryland law, specifically Md. Com. § 12-121(a)(1)(ii), which prohibits "lenders" from imposing such fees.

### B. Kemp's Trial Plan and Loan Modification

In addition to the referenced correspondence regarding her loan, Kemp alleges that in a letter dated July 20, 2017, Seterus offered her a "Trial Period Plan" (TPP) in order to obtain a Fannie Mae loan modification. The plan required Kemp to make three trial payments to Seterus, on behalf of Fannie Mae, on or before September 1, October 1, and November 1, 2017. Kemp claims she accepted the TPP offer and made all the trial period payments. *Id.* ¶ 31-33.

On November 8, 2017, Seterus, on behalf of Fannie Mae, offered Kemp a Final Loan Modification Agreement. *Id*. ¶ 33. The offer stated that "unpaid interest, real estate taxes, insurance premiums, and certain assessments" would be added to the mortgage balance Kemp owed. ECF No. 26-5 at 3. Kemp subsequently agreed to the proposed Final Loan Modification Agreement, which she claims capitalized the property inspection fees claimed due by Seterus. ECF No. 17 ¶ 36.

Since the loan modification, Kemp states that she has continued to make her modified mortgage payments and that her loan remains in effect. *Id.* ¶ 37. At no time did Seterus or Fannie Mae provide Kemp with new TILA disclosures.

### C. The Present Litigation

Based on these allegations Kemp brings six causes of action on behalf of herself and on behalf of three putative classes of situated persons. These claims all stem from the alleged improper property inspection fees added to her loan and include: 1) declaratory and injunctive

relief related to Kemp's and the State Law Class members' mortgage accounts against both Defendants; 2) unjust enrichment on behalf of Kemp and the State Law Class against Seterus; 3) Maryland Consumer Debt Collection Practices Act (MCDCA) and Maryland Consumer Protection Act (MCPA) claims on behalf of Kemp and the State Law Class Members against Seterus; 4) Md. Com. Law § 12-121(a)(1)(ii) claim on behalf of Kemp and Usury Class members against both Defendants; 5) Maryland Mortgage Fraud Protection Act (MMFPA) claim on behalf of State Law Class members and Kemp against Seterus; and 6) TILA violations—the one and only federal claim—on behalf of the TILA Class members and Kemp against all Defendants, or in the alternative, only against Fannie Mae. ECF No. 17.

Kemp originally filed this suit in Montgomery County Circuit Court on December 19, 2017, and amended her Complaint in that court on January 26, 2018.

On February 15, 2018, based on federal question jurisdiction, Defendants removed the case to this Court, accompanied by a Motion to Dismiss the First Amended Complaint. Kemp responded to the Motion to Dismiss but, without seeking leave from the Court, also filed a Second Amended Complaint on March 15, 2018.

The Court, however, denied Defendants' Motion to Strike the Second Amended Complaint, granted Kemp leave to amend, and accepted the Second Amended Complaint she had filed.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) prescribes "liberal pleading standards," requiring only that a plaintiff submit a "short and plain statement of the claim showing that [he or she] is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citing Fed. R. Civ. P. 8(a)(2)). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must

4

plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court accepts factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Indeed, the court need not accept legal conclusions couched as factual allegations or "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Associates Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

### III. ANALYSIS

Because the only claim arising under the original jurisdiction of the Court is Count VI, the Court addresses the Motion to Dismiss Kemp's TILA claims front and center.

**A.    Count VI: TILA Claims**

In Count VI of the Second Amended Complaint, Kemp alleges three TILA violations. First, she alleges a violation of 15 U.S.C. § 1639g based on the purported payoff statement Seterus provided in September 2017, which she claims was inaccurate because it included the unlawful property inspection charges. Second, she alleges a violation of 12 C.F.R. § 1026.36(c), the corresponding regulation that implements 15 U.S.C. § 1639g, based on the same September 2017 payoff statement. Third, she alleges a separate violation under 12 C.F.R. § 226.18 based on Defendants' alleged failure to provide new TILA disclosures when they added these property inspection fees to the principal amount owed by her on the loan. Hr'g Tr. at 13:19-14:12.

Title 15 Section 1639g of the U.S. Code provides: "A creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance." The corresponding

5

regulation that implements the statute, 12 C.F.R. § 1026.36(c)(3), similarly requires that a "creditor, assignee, or servicer" provide an accurate payoff balance. Finally, 12 C.F.R. § 226.18 requires that a creditor make certain disclosures for each new credit transaction.

TILA, however, imposes civil liability only on creditors and, only in limited circumstances, assignees of creditors. 15 U.S.C. §§ 1640(a), 1641(a). A "creditor" is defined by TILA to refer only to a person who both: "(1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is *initially* payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. § 1602(g) (emphasis added).

Though TILA provides for liability of assignees in certain circumstances, its reach is limited. A civil action for a TILA violation "may be maintained against any assignee of such creditor *only if* the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary." 15 U.S.C. § 1641(a) (emphasis added).

Defendants have moved to dismiss Count VI arguing, *inter alia*, that neither of them are "creditors" within the meaning of TILA. ECF No. 24.

*1) Seterus*

The TILA claims against Seterus, who is the loan servicer, are clearly dismissible. *See, e.g., Mbongo v. Specialized Loan Servicing*, LLC, 2016 WL 8671841, at *5-6 (D. Md. June 24, 2016) (dismissing TILA claim against servicer because it was neither the loan originator nor an assignee of the loan); *Davis v. Wilmington Fin., Inc.*, No. PJM 09-1505, 2010 WL 1375363, at

6

*4 (D. Md. Mar. 26, 2010) ("Wilshire, as the servicer of the mortgage loan and not an assignee or owner of the loan, has no liability for alleged violations of TILA[.]").

   2)   *Fannie Mae*

The TILA violations as to Fannie Mae require slightly more comment.

   i.   <u>Inaccurate Payoff Statement (15 U.S.C. § 1639g &12 C.F.R. § 1026.36(c))</u>

Though it is undisputed that Fannie Mae is not the original creditor to whom the mortgage debt was initially payable, Kemp argues that as an assignee of the original creditor, Fannie Mae should be held liable under 15 U.S.C. §§ 1602(g), 1641(a) because as the current owner of the loan it stepped into the shoes of the original creditor. To hold otherwise, she says, would completely destroy the remedial purpose of TILA.[1] ECF No. 26 at 17-19; Hr'g Tr. at 23.

In response, Fannie Mae argues that §1602(g)'s language is clear: it only applies to the original creditor, not to subsequent assignees. Moreover, it argues that § 1641(a), which extends TILA's reach to certain assignees, is not applicable because the alleged inaccuracy is not apparent from the face of the disclosure statement. Fannie Mae replies that Kemp's argument that reading § 1639g to only apply to mortgage originators ignores TILA's remedial purpose, Fannie Mae says, has been expressly rejected by both the Eleventh and Second Circuits. *See,*

---

[1] Though not addressed in the parties' pleadings, for the first time at oral argument Kemp argued that Fannie Mae may also be liable as an assignee because the regulation that implements the statute, 12 C.F.R. § 1026.36(c), specifically names assignees and therefore supersedes the statutory language of 15 U.S.C. §§ 1602(g), 1641(a). The Court rejects this argument. To start, the Court does not necessarily read the regulation and the statute as inconsistent with each other. While the regulation provides what assignees, creditors, and services must do, it does not itself provide a private right of action. The statute, which the regulation is intended to implement, grants a right of action only against creditors as defined within the Act. To the extent Kemp argues that the regulation directly contradicts and supersedes the statute, this argument fails. Regulations cannot overrule the statute under which they are promulgated. *See United States v. Larionoff*, 431 U.S. 864, 873, 97 S. Ct. 2150, 2156, 53 L. Ed. 2d 48 (1977) ("[R]egulations, in order to be valid must be consistent with the statute under which they are promulgated."); *see also Vincent v. The Money Store*, 736 F.3d 88, 109 (2d Cir. 2013) ("It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd— is to enforce it according to its terms.") (quoting *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004)). Thus, Kemp may only prevail with her TILA claims if Defendants are susceptible to liability under 15 U.S.C. §§ 1602(g),1641(a).

7

*e.g., Evanto v. Fed. Nat. Mortg. Ass'n*, 814 F.3d 1295, 1297–98 (11th Cir. 2016); *Vincent v. The Money Store*. 736 F.3d 88, 109 (2d Cir. 2013).

The Court agrees with Fannie Mae. The statute in question authorizes a private right of action against an assignee in a very narrow set of circumstances, i.e., *only if* the violation for which such action is brought is apparent on the face of the disclosure statement. 15 U.S. C. § 1641(a). The question, then, is whether providing an inaccurate payoff statement is a violation that is "apparent on the face of the disclosure statement." The Eleventh Circuit analyzed this precise issue and held that it is not. *See Evanto*, (holding that failure to provide a payoff balance is not a violation apparent on the face of the disclosure statement). The *Evanto* court reached this conclusion, reasoning that a "disclosure statement is a document provided *before* the extension of credit that sets out the terms of the loan." *Id.* (emphasis added). Because a "payoff balance can be provided only after a loan has been made and contains the amount yet to be repaid ,. . . . [t]here is no way that the failure to provide a payoff balance can appear on the face of the disclosure statement." *Id*. The same reasoning applies to an alleged inaccurate payoff statement provided after the loan has been made, as is the case here.

The Second Circuit similarly recognized the limited liability TILA places on assignees of the original creditor. *See Vincent*, 736 F.3d at 109 ("We may think it unwise to allow an assignee to escape TILA liability when it overcharges the debtor and collects unauthorized fees, where the original creditor would otherwise be required to refund the debtor promptly. But such a result is not 'absurd.' We will not rewrite the text of the statute, nor will we refuse to defer to the Federal Reserve's consideration of the liability of assignees in Regulation Z.").

This Court accepts the logic of the Eleventh and Second Circuits. Kemp's claim of violations for inaccurate payoff balances are not cognizable TILA claims against Fannie Mae as an assignee.

ii.   Failure to Provide New Disclosures (12 C.F.R. § 226.18)

Even if Fannie Mae does not fall within the limited category of assignees that can be held liable under TILA, Kemp says her claim under 12 C.F.R. § 226.18 survives because the property inspection fees were new charges such that Fannie Mae became the original creditor and new TILA disclosures were required. Hr'g Tr. at 14; ECF No. 26 at 21-22 (citing *Travis v. Boulevard Bank N.A.*, 880 F. Supp. 1226, 1229–30 (N.D. Ill. 1995) ("The court believes that the Defendant's purchase of the allegedly unauthorized insurance and the subsequent addition of the resulting premiums to Plaintiffs' existing indebtedness constituted a new credit transaction. Defendant's action involved augmenting Plaintiffs' existing finance charge with an additional finance charge for the resulting premiums. This transaction required new disclosures under TILA.")).[2]

Generally speaking, TILA's disclosure requirements are triggered *before* a credit transaction is consummated.  12 C.F.R. § 226.17(b) ("The creditor shall make disclosures *before* consummation of the transaction.") (emphasis added). Changes to an existing loan that subsequently make the original disclosure inaccurate do not typically create a claim under TILA. *See Scroggins v. LTD, Inc.,* 251 F. Supp. 2d 1277, 1281 (E.D. Va. 2003) ("[A] complaint fails to state a valid TILA claim unless it alleges that the required [contract] disclosures were inaccurate

---

[2] Though Kemp's Opposition brief seems to suggest that the loan modification itself required new disclosures, she clarified at oral argument that she was not pursuing a claim on this ground. Hr'g Tr. at 32. Indeed, several Judges in this District have held that TILA does not apply to loan modifications. S*ee, e.g., Rodriguez v. Indymac Mortg. Servs*., FSB, No. RWT 12-CV-2207, 2013 WL 1191268, at *4 (D. Md. Mar. 21, 2013) ("These claims also fail because even if the parties entered into a loan modification, the TILA does not appear to apply to loan modifications"); *Scott v. Wells Fargo Home Mortgage, Inc.*, 326 F.Supp.2d 709, 715–16 (E.D.Va.2003) (noting that "restructuring/modification agreements are exempt from TILA's disclosure requirements").

as of the date of consummation of the transaction."). Indeed, the associated regulations identify a limited set of circumstances where new TILA disclosures are required following the initial closing on a mortgage loan, namely refinancing, assumption of a loan, or an adjustment to the interest rate in variable-rate transactions—none of which Kemp contends apply here. 12 C.F.R. § 226.20.

Though Kemp cites at least one case suggesting that when a lender adds unauthorized fees, it creates a new credit transaction, *see Travis*, 880 F. Supp. at 1229–30, several other cases indicate that new TILA disclosures are not required for fees assessed post the original transaction. The Sixth Circuit, for example, held that additional disclosures were not required when a lender offered the borrower payment deferrals with extension fees, that ended up increasing the overall interest owed. S*ee Begala v. PNC Bank, Ohio, Nat. Ass'n*, 163 F.3d 948, 951 (6th Cir. 1998), *as amended* (Mar. 26, 1999) (distinguishing Travis and concluding "TILA's disclosure requirements arise *before* a credit transaction is consummated, and Begala does not challenge the initial disclosures he received. No specific duty to make post-consummation disclosures arises under the statute or the regulations, and each payment deferral cannot be construed as a new credit transaction, triggering TILA's disclosure requirements.") (emphasis added).

Kemp does not challenge the initial disclosures she received. Nor, obviously, can she do so as to these Defendants. To be sure, whether or not the property inspection fees were lawfully charged under Maryland law has yet to be determined. They may or may not be. As Fannie Mae points out, for instance, the property inspection fees were previously noted in the deed of trust agreed to by Kemp, *see* ECF No. 24-4, so arguably they are not new credit transactions that could impose liability on Fannie Mae under TILA.

In any case, Kemp's TILA claims fail as to Fannie Mae.

**B.      Supplemental Jurisdiction**

Having dismissed all of Kemp's federal claims, the Court, as a matter of discretion, declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims"). Given that this dispute centers entirely around the interpretation of Maryland commercial law, the case is more appropriately handled in state court.

Accordingly, the Court **DISMISSES** Count VI with prejudice, the **REMANDS** the case to state court, where it began.

### IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 24) is **GRANTED**. Count VI of the Second Amended Complaint is **DISMISSED WITH PREJUDICE**. The case is **REMANDED** for consideration of the state law claims.

A separate Order will **ISSUE**.

                                                                                                   /s/                               
**PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE**

**June 27, 2018**